

U.S. Department of Justice

Executive Office for United States Trustees

Office of the Director

Washington, D.C. 20530

July 9, 2007

William McGrane, Esquire
McGrane Greenfield, LLP
One Ferry Building
Suite 220
San Francisco, CA 94111

Re:  Review of Decision to Deny Approved Status – Tides Center,
     Application No. 0506-CC-00372

Dear Mr. McGrane:

As counsel for Tides Center, enclosed please find a copy of the decision of the Director, Executive Office for United States Trustees, which constitutes final agency action in the above-captioned matter.

Sincerely,

Donald F. Walton
Acting Deputy Director

Enclosure

DEFENDANT'S EXHIBIT 1

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES

FINAL AGENCY ACTION

APPLICATION FOR APPROVAL AS A NONPROFIT BUDGET
AND CREDIT COUNSELING AGENCY, 0506-CC-00372

<u>REVIEW OF DECISION TO DENY APPROVED STATUS</u>

Tides Center, d/b/a Consumer Bankruptcy Counseling Project ("Applicant"), seeks review of the decision dated August 17, 2006, denying its application for approval as a nonprofit budget and credit counseling agency ("application"). Based upon the record before me, I affirm the decision to deny the application.[1]

## I. COURSE OF THIS PROCEEDING

The Applicant applied for approval as a nonprofit budget and credit counseling agency on May 15, 2006. By letter dated June 2, 2006, additional information was sought from the Applicant. On July 17, 2006, the Applicant responded to the June 2nd letter and provided supplemental information regarding its application.

After review of the application and the additional information provided by the Applicant in its July 17, 2006, letter, an initial determination was made that the Applicant did not satisfy the applicable standards for approval as set forth in 11 U.S.C. § 111(c). The Applicant was notified of the decision to deny the application and was provided an explanation for the denial by letter dated August 17, 2006 ("denial letter"). By letter dated November 1, 2006, which was received on November 13, 2006, the Applicant requested a review of the denial of the application ("request for review") pursuant to the procedures established by the Interim Rule published at 28 C.F.R. § 58.17. On May 17, 2007, the Applicant filed a "Complaint for Order Compelling the Executive Office for United States Trustees to Grant Approval of Petitioner's Application for Certification as a Budget and Credit Counseling" in the United States District Court for the Northern District of California (Case No. C07-02621).

## II. THE DENIAL DECISION

The denial letter set forth the following four reasons why the Applicant failed to satisfy the standards for approval under 11 U.S.C. § 111(c):

1. The Applicant failed to demonstrate that it will provide adequate counseling that includes an outline of available counseling opportunities to resolve a client's

---

[1] Pursuant to 28 C.F.R. § 58.17(i), the Director has extended the period for issuing a written final decision to this date.

credit problems, an analysis of the client's current financial condition, a discussion of the factors that caused such financial condition, and assistance in developing a plan to respond to the client's problems without incurring negative amortization of debt as required by 11 U.S.C. § 111(c)(1) and (2)(E).

    a. Upon completion of an Internet counseling session, the Applicant presents one of three stock alternatives based on the client's disposable income. All of the alternatives are limited to suggesting that the client seek assistance from a bankruptcy attorney or a financial consultant.

    b. The Applicant does not review the information provided for accuracy; does not analyze the information to assess a client's specific problems; does not discuss the client's unique situation; and does not attempt to develop options or strategies to resolve a client's specific problems.

    c. The website contains a disclaimer stating, "Nothing contained on this website is meant . . . to advise you to take any specific course of action . . . . If you have questions that are not answered on this website, you should consult with a qualified financial advisor or lawyer."

2. The Applicant failed to employ trained and experienced counselors to provide credit counseling services as required by 11 U.S.C. § 111(c)(1) and (2)(F).

    a. In response to the June 2nd request for additional information, the Applicant withdrew the Appendix B submitted with the application, and stated that it would employ a "part-time experienced and certified bankruptcy paralegal to respond to questions, problems or concerns with the website script."

    b. The Applicant did not provided any information concerning the proposed paralegal's training and experience as a credit counselor.

3. The Applicant failed to demonstrate adequate experience and background in providing credit counseling as required by 11 U.S.C. § 111(c)(1) and (2)(G).

    a. Although the Applicant is a well-established nonprofit organization, the Applicant does not appear to have any experience in providing credit counseling services.

    b. The Applicant failed to commit to employ an individual with credit counseling experience in a supervisory position to satisfy this requirement.

4. The Applicant failed to demonstrate that it will deal responsibly and effectively with matters relating to the quality of the services it provides and to demonstrate sufficient experience and proficiency in the design and delivery of services via the Internet, as required by 11 U.S.C. § 111(c)(1).

    a.    A client's financial data is not saved so that a counselor can review and discuss matters with the client.

    b.    There are no safeguards to prevent a client from quickly advancing to the 12th screen or page and entering the client's name, Social Security number, home address, and email address to generate the mailing of a counseling certificate. As designed, "counseling" could be completed in as much time as it takes to complete the 12th screen or page (approximately 2-3 minutes).

## III.  THE REQUEST FOR REVIEW

In its request for review, the Applicant sought review of the denial of its application on three grounds.

First, the Applicant argues that inappropriate standards were applied in finding that it had not demonstrated that it would provide adequate counseling services to its clients. Section 109(h)(1) of the Bankruptcy Code refers to "an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted [the client] in performing a related budget analysis." Based upon this, the Applicant asserts that the counseling required by the Bankruptcy Code is limited, and that inappropriate standards were applied in determining that the application should not be approved.

Second, the Applicant maintains that inappropriate standards were applied in connection with the determinations that it would not hire qualified counselors and that its counseling service would not be supervised by an individual with sufficient experience. The Applicant asserts that, as a new business, it would be inappropriate to hire personnel before its application was approved. The Applicant further argues that the commitment to hire a part-time bankruptcy paralegal to answer inquiries about the website script sufficed to satisfy staffing requirements because, in its view, the information provided by the website alone was sufficient to satisfy the counseling requirement. In a similar vein, the Applicant asserts that because the website was designed to be largely self-sufficient it was inappropriate to require that the Applicant retain an employee with significant credit counseling experience.

Finally, the Applicant takes issue with findings in the denial letter relating to the safeguards built into the website. It asserts that because, in its view, the website provided adequate counseling, a clients' financial information did not need to be transmitted to the Applicant. In response to the assertion that the website did not prevent a client from quickly proceeding to receive a certificate without entering real data into the system, the Applicant argued that "[t]he system is not designed to be jumped, although for evaluation of the beta site . . . there must be the ability to progress through the site pages." The Applicant asserts that the website would be "continuously fine tuned," and that its application could have been approved with conditions or strictures.

IV. **STANDARD OF REVIEW**

In conducting this review, the Director must consider two factors:

1. Is the denial decision supported by the record?

2. Does the denial decision constitute an appropriate exercise of discretion?

28 C.F.R. § 58.17(i).

V. **ANALYSIS**

A. <u>Duties of the United States Trustee</u>

Under 11 U.S.C. § 111, United States Trustees are required to approve nonprofit budget and credit counseling agencies for inclusion on a list maintained and made publicly available by the clerks of the United States bankruptcy courts. Agencies on approved lists are authorized to issue credit counseling certificates that individual debtors are required under 11 U.S.C. § 521(b) to file with their petitions.

Section 111(b) of the Bankruptcy Code provides in relevant part:

(b) The United States trustee . . . shall only approve a nonprofit budget and credit counseling agency . . . as follows:

> (1) The United States trustee . . . shall have thoroughly reviewed the qualifications of the nonprofit budget and credit counseling agency . . . under the standards set forth in this section, and the services . . . that will be offered by such agency . . ., and may require such agency . . . that has sought approval to provide information with respect to such review.

> (2) The United States trustee . . . shall have determined that such agency . . . fully satisfies the applicable standards set forth in this section.

11 U.S.C. § 111(b).

Section 111(c) of the Bankruptcy Code sets forth the standards for approval of nonprofit budget and credit counseling agencies:

(c)(1) The United States trustee . . . shall only approve a nonprofit budget and credit counseling agency that demonstrates that it will provide qualified counselors, maintain adequate provision for safekeeping and payment of client funds, provide adequate counseling with respect to client credit problems, and deal responsibly and effectively with other matters relating to the quality, effectiveness, and financial security of the services it provides.

Page 4 of 11

(2) To be approved by the United States trustee . . ., a nonprofit budget and credit counseling agency shall, at a minimum--

    (A) have a board of directors the majority of which--
        (i) are not employed by such agency; and
        (ii) will not directly or indirectly benefit financially from the outcome of the counseling services provided by such agency;

    (B) if a fee is charged for counseling services, charge a reasonable fee, and provide services without regard to ability to pay the fee;

    (C) provide for safekeeping and payment of client funds, including an annual audit of the trust accounts and appropriate employee bonding;

    (D) provide full disclosures to a client, including funding sources, counselor qualifications, possible impact on credit reports, and any costs of such program that will be paid by such client and how such costs will be paid;

    (E) provide adequate counseling with respect to a client's credit problems that includes an analysis of such client's current financial condition, factors that caused such financial condition, and how such client can develop a plan to respond to the problems without incurring negative amortization of debt;

    (F) provide trained counselors who receive no commissions or bonuses based on the outcome of the counseling services provided by such agency, and who have adequate experience, and have been adequately trained to provide counseling services to individuals in financial difficulty, including the matters described in subparagraph (E);

    (G) demonstrate adequate experience and background in providing credit counseling; and

    (H) have adequate financial resources to provide continuing support services for budgeting plans over the life of any repayment plan.

11 U.S.C. § 111(c).

### B.    Bases for Denial

    1.    Adequacy of Counseling Services to Be Offered

To be approved as a nonprofit budget and credit counseling agency, an applicant must demonstrate, among other things, that it will "provide adequate counseling with respect to client credit problems that includes an analysis of such client's current financial condition, factors that

caused such financial condition, and how such client can develop a plan to respond to the problems without incurring negative amortization of debt." 11 U.S.C. § 111(c)(2)(E). *See also* 28 C.F.R. § 58.15(f)(1). Based on the record before me, I conclude that the Applicant has failed to meet this requirement for approval.

The Applicant seeks to provide counseling services by means of an Internet website. The Applicant provided access to what it described as a "beta" version of the website for review. The website forthrightly asserts that it is providing "credit counseling" to satisfy the requirement that a person obtain such counseling before filing for bankruptcy. The website provides a printable worksheet to be completed offline; the client is then expected to transfer the information from the worksheet to pages of the website. Before reaching the pages where this information is to be entered, the client is presented with a disclaimer that, among other things, instructs clients to consult a qualified financial advisor or lawyer if they have questions that are not answered on the website. The client is then presented with eight pages for the entry of information about the client's finances. The required information relates solely to income and expenses. No information on assets and liabilities is gathered. Once the client has entered the requested income and expense items, a summary page is prepared that reflects that information.

When the client moves to the next page, the results vary depending upon the relationship between the client's income and expenses. If the client's expenses exceed the client's income, apparently by any amount whatsoever, the website will advise the client that he or she is "in a financial crisis" and that the monthly expenses "significantly exceed" monthly income. The client is told "to seek legal help as soon as possible; bankruptcy may be your only option." If, on the other hand, the client's income barely exceeds the client's expenses, the website reports that the client is "in financial trouble." The client is told that bankruptcy may be avoided by increasing income, reducing expenses, or restructuring debt. The client is advised to immediately consider these options, and the website suggests that the client "brainstorm" with another person about ways to make more money or reduce expenses. The website states that the client "will probably need to file for bankruptcy" if income cannot be increased or expenses cannot be reduced. Finally, if the client's income substantially exceeds expenses, the website will report that the client "seem[s] to be on solid financial ground." The client is advised that he or she should be able to avoid bankruptcy unless the client has financial problems not reflected in the income and expense figures. If such problems exist, the client is told that he or she "may need qualified financial counseling." The Applicant's website provides no additional information or suggestions to the client other than a general discussion of some basic principles of bankruptcy.

I must conclude that this website does not demonstrate that the Applicant would provide adequate counseling to its clients. Section 111(c)(2)(E) requires that adequate counseling include an analysis of the client's current financial condition. *See also* 28 C.F.R. § 58.15(f)(1). While the website, if properly completed, should lead to an accurate determination of the client's net monthly income, a client's current financial condition cannot always be determined based on that one factor alone. If, for instance, a client has substantial equity in a home or other assets, the client might be able to consolidate debts and lower monthly expenses by borrowing money at a low rate or liquidating assets and using the proceeds to pay off high rate credit cards and other debts. The Applicant's website would advise someone in that position whose expenses exceeded their income that bankruptcy might be their only option, and would then provide them with the

certification necessary to file. The client would never be advised of common-sense alternatives to bankruptcy. Because the information gathered on a client's finances is incomplete, I conclude that the Applicant would not provide a true analysis of the client's financial condition.

Section 111(c)(2)(E) also requires that adequate counseling include an analysis of factors that caused the client's financial condition. *See also* 28 C.F.R. § 58.15(f)(1). The Applicant's website does not provide such an analysis. No effort is made to identify why a client's expenses might exceed income. All other things being equal, a client with large monthly amounts of easily-reduced discretionary expenses would receive exactly the same advice as a client with the same monthly amount of necessary health care costs. The website runs a mathematical calculation and gives one of three pieces of advice based on the result. This is not an analysis of factors causing a client's financial condition.

Section 111(c)(2)(E) further requires that adequate counseling include an analysis of how the client can develop a plan to respond to the financial problems without incurring negative amortization of debt. *See also* 28 C.F.R. § 58.15(f)(1). To be clear, the statute does not require that a formal debt management plan be prepared; in fact, nonprofit budget and credit counseling agencies have been approved that do not prepare or administer debt management plans. But the statute does clearly contemplate that the client be provided with information that would enable the client to evaluate if a formal (or informal) repayment plan could be developed. The Applicant's website does nothing in this regard. If the client's expenses exceed income by any amount, the client is told to contact an attorney and that bankruptcy may be the client's only option. The delivery of stock advice to seek bankruptcy relief does not constitute a true analysis of how a client can develop a plan to respond to financial problems.

In its request for review, the Applicant focuses on the statutory language requiring that an individual seeking to file bankruptcy receive "an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis." 11 U.S.C. § 109(h)(1). Based on this language, the Applicant asserts that the statute does not contemplate that persons receive true counseling services and that a much more limited briefing will suffice. This view does not comport with the statutory scheme. First, subsections (2) and (3) of section 109(h) both refer to the services required under subsection (1) as "credit counseling." More importantly, the Applicant completely ignores section 111(c), which specifically sets out the minimum standard for the approval of budget and credit counseling agencies to provide the counseling required by section 109(h)(1). Section 111(c) clearly requires that an approved agency provide adequate counseling as discussed above, that it provide trained counselors who can provide such counseling, and that it demonstrate adequate experience and background in providing credit counseling.[2] *See also* 28 C.F.R. § 58.15(f)(2) and (3). Congress

---

[2] In April 2007, the United States Government Accounting Office issued its report on the implementation of the credit counseling and debtor education provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, GAO Report 07-203 ("GAO Report").

Page 7 of 11

would not have included such stringent standards for approval if the only counseling required consisted of determining if a client's expenses exceeded income and advising the client to consider bankruptcy if they did.

### 2. Ability of Applicant to Provide Adequate Counseling Services

The decision not to approve the Applicant was also based upon concerns about the adequacy of the Applicant's staffing. While the original application erroneously listed three attorneys as persons who would provide counseling services, the Applicant, in response to an inquiry, corrected this and stated that "[o]nce the Agency has otherwise obtained permission to go live with its website it, as a non-profit, will hire at least one part-time experienced and certified bankruptcy paralegal to respond to questions, problems or concerns with the website script."[3] Section 111(c)(2)(F) requires that an approved agency "provide trained counselors . . . who have adequate experience, and have been adequately trained to provide counseling services to individuals in financial difficulty . . . ." *See also* 28 C.F.R. § 58.15(f)(2). Section 111(c)(2)(G) requires that an Applicant "demonstrate adequate experience and background in providing credit counseling . . . ." *See also* 28 C.F.R. § 58.15(f)(3). The denial letter stated that the agreement to hire a part-time paralegal to assist with the website script did not comport with these statutory requirements. Based on the record, the decision to deny approval of the application for this reason is an appropriate exercise of discretion.

Because the Applicant is seeking to establish a new credit counseling agency, it does not currently employ counselors. Before a start-up agency can be approved, the agency must provide the U.S. Trustee Program with sufficient information about its proposed staffing to enable it to determine if the agency, once staffed, will meet the statutory standards for approval. The U.S.

---

Based upon a review of 15 approved credit counseling agencies, representing more than two-thirds of certificates issued between January 9, 2006, and October 17, 2006, the GAO Report found that:

> Credit counseling sessions generally began with providers collecting data on the client's finances, including sources and amount of income, debt, and expenses. In some cases, providers received some of this information from the client in advance via the Internet or from the client's credit report. Individual counselors then typically analyzed the data with a software program and provided the client with a personalized budget. They discussed the client's financial goals and potential opportunities for reducing spending and paying off debt. Counselors then described the client's options—for example, developing a budget, entering into a debt management plan, or filing a Chapter 7 or Chapter 13 bankruptcy. Although counselors are prohibited from giving legal advice or recommending whether or not clients should file for bankruptcy, some providers describe the advantages and disadvantages of each alternative.

GAO Report at 20.

[3] Letter dated July 17, 2006, from William McGrane to Sabrina Petesch.

Page 8 of 11

Trustee Program must review applications based upon information provided and representations made by applicants. If the application does not demonstrate that the applicant will staff its operation in a manner that will meet the statutory requirements, the application cannot be approved.

Here, the Applicant has committed only to hire a part-time experienced and certified bankruptcy paralegal to respond to questions, problems, or concerns with the website script. There is nothing in the record to support the conclusion that this person has any budget or credit counseling experience or training. Moreover, the person would not have access to the financial data entered by clients on the website necessary to effectively provide counseling. Instead, the Applicant believes that the website alone would provide sufficient counseling to meet the counseling requirement of section 109(h)(1).

In the request for review, the Applicant argues that the statutory approval of Internet counseling obviates the need for trained counselors. This is incorrect. First, as a matter of statutory construction, section 111(c) requires as a condition of approval that all agencies provide trained and experienced counselors.[4] 11 U.S.C. § 111(c)(2)(F). *See also* 28 C.F.R. § 58.15(f)(2). Second, the inclusion of the Internet (as well as telephone) as a method for conducting the required counseling was meant to increase consumers' choices for obtaining counseling services quickly and conveniently, not to dispense with the requirement of trained counselors necessary to provide individualized counseling. The GAO found that, even in areas where in-person counseling was available, almost one-half of debtors obtained counseling by the Internet. GAO Report at 5.[5] Finally, approved Internet-based credit counseling providers have successfully incorporated a separate component by which the client communicates individually with a counselor. Providers told the GAO that, "after completing the Internet portion of the counseling session, the client could speak with a counselor by telephone or, in some cases, via Web chat. During these one-on-one communications, which one provider told us typically last 10 to 20 minutes, counselors reviewed the budget analysis with the client and answered any questions." GAO Report at 21.

The Applicant also failed to "demonstrate adequate experience and background in providing credit counseling." 11 U.S.C. § 111(c)(2)(G). *See also* 28 C.F.R. § 58.15(f)(3). Again, because the Applicant is a start-up, it does not have that experience. Agencies have been approved based upon their commitment to retain highly experienced counseling personnel to

---

[4] The GAO found that "[o]ur review of materials used to facilitate credit counseling sessions indicated that they generally had the same content and structure regardless of whether they were delivered in person, by phone, or via the Internet." GAO Report at 21.

[5] "Trustee Program data collected on certificates issued between July 11 and October 17, 2006, indicated that 45 percent of all pre-filing counseling sessions were conducted by telephone, 43 percent were conducted via the Internet, and 13 percent were conducted in person." GAO Report at 21.

Page 9 of 11

supervise their operations.[6] Here, the Applicant sought to operate an approved counseling agency with no experienced counseling personnel at all. Approval of the application under those circumstances would have contravened section 111(c) of the Bankruptcy Code.

      3.      Website Design Issues

The denial letter also cited issues related to the design and delivery of services through the Applicant's website as an additional reason to deny the application. Many of these issues are closely related to the lack of any review of data entered by clients on the website.

The website lacks any mechanism to verify the accuracy of the data. A client could enter any numbers whatsoever (or even no numbers at all) in the data screens of the website and the client would be awarded at the end of the process with a certificate that would enable the client to meet the requirements of section 109(h)(1).[7] Although the website now contains an affidavit from the client swearing that the client entered accurate information on the website, no safeguards are included to monitor that information.[8] The application was properly denied on this ground alone.

In addition, the website's design limits the client's ability to receive effective counseling and raises the specter of abuse. Because the client's financial data is not saved, there is no opportunity for a counselor (if one existed) to effectively review and discuss this information. The ability to skip through the screens without entering any data enables the client to complete this process in a few minutes without receiving any information of value from the counseling experience. In the request for review, the Applicant asserts that persons undergoing telephone or in-person counseling are not required to pay attention, and that they might sit stoically through the counseling and still receive a certificate at the end of the process. Although this may be true, those clients cannot circumvent the opportunity for effective counseling as they can through the Applicant's website.[9]

---

[6] To date, eight agencies have been approved that provided credit counseling services for less than nine months as of the date of their application.

[7] For example, the client could enter a monthly mortgage expense of $8,000 and a yearly income of $8,000 and the website would tell the client that he or she was in dire financial straits, even though the apparently conflicting information might be the result of a typographical error or other circumstance that cannot be explained or otherwise made evident through the website as structured.

[8] Approved Internet-based agencies have the means to verify the accuracy of data. For example, one approved agency requires that, at the end of the Internet session, the client must call the agency and speak with a counselor to, among other things, verify both the client's identity and the data that has been input. Another agency compares the data provided in the counseling session to information contained in the client's credit report.

[9] Moreover, it is possible to insure that the client is engaged in the counseling session. For example, one approved Internet-based agency requires that, at various points during the

Lastly, the website fails to verify the client's identity. A person could operate the website, as currently configured, to quickly generate a series of certificates for a group of other persons, and so long as the person completing the information did not have the certificates sent to the same address, the Applicant would have no means to determine that this conduct was taking place. Congress clearly did not intend that the United States Trustee Program approve an agency whose services could be so easily used to circumvent the credit counseling requirement.[10]

## VI. CONCLUSION

Based upon my review of the record, I affirm the decision to deny the application of Tides Center, d/b/a Consumer Bankruptcy Counseling Project, for approval as a nonprofit budget and crediting counseling agency.

The foregoing conclusions and decisions constitute final agency action in this matter.

Dated: July 8, 2007

Clifford J. White III
Director
Executive Office for United States Trustees

---

session, the client interact with a counselor using a live chat function. The client cannot proceed without completing the online session with the counselor. Another approved agency requires that, at the end of the Internet session, the client must call the agency and speak with a counselor to review the information that was input and discuss available options.

[10] Approved Internet-based credit counseling providers have successfully addressed identity verification issues. For example, one provider requires that the client input personal data and allow the agency to pull a credit report at the beginning of the counseling session. A counselor then verifies that the data entered corresponds with the information in the credit report before a certificate is issued. Another agency requires the client to provide personal information at the beginning of the counseling session and then assigns a control number during the course of the session. At the end of the session, the client is required to provide this information to a counselor by telephone.